[No. 40448-6-II. Division Two. July 26, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN M. LUNDY, *Appellant*.

*Manek R. Mistry* and *Jodi R. Backlund* (of *Backlund & Mistry*), for appellant.

*Jon Tunheim, Prosecuting Attorney*, and *John C. Skinder, Deputy*, for respondent.

¶1 ARMSTRONG, J. — A jury convicted John Lundy of possession of a stolen vehicle, two counts of unlawfully issuing bank checks, and two counts of bail jumping. Lundy appeals, arguing (1) the trial court erred by using a modified version of jury instruction 4.01 to instruct the jury on the State's burden of proof, (2) the trial court improperly commented on the evidence, (3) a witness gave impermissible opinion testimony, (4) insufficient evidence supports one of his bail jumping convictions, (5) the trial court erred by admitting propensity evidence without a limiting instruction, (6) the trial court erred by denying his motion for a jury instruction on the "uncontrollable circumstances defense to bail jumping," (7) the "to convict" bail jumping instructions omitted essential elements of the crime, (8) his counsel ineffectively represented him by failing to object to numerous pieces of evidence, (9) the trial court incorrectly calculated his offender score, and (10) the trial court erred by finding that aggravating factors justified an exceptional

sentence without jury findings of fact. Finding no reversible error, we affirm Lundy's convictions. We remand, however, for the sentencing court to reconsider Lundy's exceptional sentence.

## FACTS

¶2 In March 2009, Lundy wrote several checks that were returned for insufficient funds. On March 7, he purchased a truck from Chris Gay with a $240 down payment and a contract to pay the remaining $2,310 in 10 weekly installments. When Gay attempted to cash Lundy's check, it was returned for insufficient funds. Gay attempted to contact Lundy by e-mail and telephone but received no response. He never received the next scheduled payment for the truck either. After two weeks, Gay reported the truck stolen. On March 27, Lundy was pulled over and taken into custody for possession of a stolen vehicle.

¶3 Lundy had also purchased several items from NAPA Auto Parts, including an alternator, with checks written on March 11 and March 13. His friend, Nick Robbins, returned the alternator the next day for a cash refund. Lundy also purchased several items from Rochester Lumber, including a chainsaw, with checks written on March 14 and March 19. Robbins returned the chainsaw the next day and the store issued a refund check. When the stores attempted to deposit Lundy's checks, they were returned for insufficient funds.

¶4 The State charged Lundy with possession of a stolen vehicle and two counts of unlawfully issuing bank checks for the checks written to NAPA Auto Parts and Rochester Lumber. When Lundy failed to appear for pretrial hearings on July 1, September 23, and October 19, 2009, the State amended the information to include three counts of bail jumping.

¶5 At trial, Paul Lemmon, a fraud investigator for Bank of America, testified that Lundy had opened an account on January 30, 2009. His deposits from January to March 2009 totaled about $420. During that time, he wrote approxi-

mately 40 checks totaling $3,800. The State asked how many checks Lundy had written between January 30 and March 4, and Lemmon listed 21 checks and their amounts. The State asked whether Lundy had sufficient funds to cover any of those checks and Lemmon said no. The State also presented account statements showing that Lundy had generated numerous nonsufficient fund fees during that time period. Gay and employees from NAPA Auto Parts and Rochester Lumber testified to the events described above.

¶6 Lundy testified that he opened the account after getting a job through the work release program at the Thurston County jail. He claimed that he thought he had signed up for direct deposit but later discovered that several checks had not been deposited into his account. He testified that he believed he had sufficient funds to cover the checks that he had written and did not intentionally write bad checks.

¶7 In support of the bail jumping charges, the State produced court documents detailing the pretrial hearings and bench warrants issued in Lundy's case. The State called Kelley McIntosh, an employee for Thurston County Pretrial Services, to explain these documents. The State's evidence showed that Lundy's case was called in open court with no response on July 1, September 23, and October 19, 2009. Lundy had signed orders directing him to appear in court on July 1 and October 19. Notice of the September 23 hearing was mailed to him but was not sent to the correct address.

¶8 Lundy acknowledged that he had missed court hearings on July 1 and October 19. He testified that it was difficult for him to keep track of his court hearings because he had ongoing cases in several jurisdictions, including "Pierce County, Chehalis tribal, Chehalis municipal, here [Thurston County] in two different courts, and in Tumwater." II Report of Proceedings (RP) at 295. He and his wife, Josephine Lundy, testified that conflicting court dates and confusion over where he was scheduled to appear had prevented him from appearing at his hearings in Thurston

County. Josephine also testified that she thought Lundy had missed court on one occasion because he was in the Chehalis Tribal Jail for "at least four or five days" around September 12, 2009. II RP at 264-67.

¶9 Shortly before closing arguments, defense counsel requested an instruction on the "uncontrollable circumstances defense to bail jumping." II RP at 355. He explained that Lundy was not going to testify initially but had changed his mind during the trial, and argued that Lundy's testimony had brought in enough evidence to warrant giving the instruction. The trial court denied the motion, ruling the request was timely under the circumstances but there was insufficient evidence to support the instruction.

¶10 The jury acquitted Lundy of the September 23 bail jumping charge and found him guilty on all other counts. At sentencing, Lundy stated that he had no objection to the State's list of his prior convictions or the State's calculation of his offender score. The sentencing court found that aggravating circumstances under RCW 9.94A.535(2) supported an exceptional sentence for possession of a stolen vehicle and sentenced Lundy to 70 months for that conviction. The court also sentenced Lundy to 29 and 12 months for the unlawful issuance of bank checks convictions, and 55 months for each of the bail jumping convictions, to be served concurrently.

## ANALYSIS

### REASONABLE DOUBT INSTRUCTION

¶11 Lundy contends that the trial court erred by using a modified version of *Washington Pattern Jury Instruction: Criminal* 4.01 to instruct the jury on the State's burden of proof. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01, at 85 (3d ed. 2008) (WPIC). He argues that *State v. Bennett*, 161 Wn.2d 303, 318, 165 P.3d 1241 (2007), requires trial courts to use WPIC 4.01 and that any deviation from its language requires reversal.

¶12 As a threshold matter, Lundy did not object to this instruction at trial. He asserts that the State proposed WPIC 4.01 and the trial court substituted its own instruction without notifying counsel. The State agrees that the trial court "made some minor changes" to WPIC 4.01 but argues that the instruction was still a correct statement of the law. Br. of Resp't at 35. Because the State's proposed instructions were not included in the record before us, it is impossible to verify whether the proposed instruction differs from the instruction given to the jury. But even assuming that the trial court altered the instruction, as the parties agree that it did, we hold that the error was harmless.

¶13 In *Bennett*, our Supreme Court held that the reasonable doubt instruction commonly referred to as the *Castle* instruction[1] "satisfied the minimum requirements of due process," but directed trial courts to use only WPIC 4.01 in the future:

> We also exercise our inherent supervisory power to instruct Washington trial courts to use only the approved pattern instruction WPIC 4.01 to instruct juries that the government has the burden of proving every element of the crime beyond a reasonable doubt.

*Bennett*, 161 Wn.2d at 318. The *Bennett* court reasoned that "[e]ven if many variations of the definition of reasonable doubt meet minimum due process requirements, the presumption of innocence is simply too fundamental, too central to the core of the foundation of our justice system not to require adherence to a clear, simple, accepted, and uniform instruction." *Bennett*, 161 Wn.2d at 317-18.

¶14 The reasonable doubt instruction used here, instruction 9, stated:

> A defendant is presumed innocent. This presumption continues throughout the entire trial unless you find during your deliberations that it has been overcome by evidence beyond a reasonable doubt.

---

[1] *See State v. Castle*, 86 Wn. App. 48, 935 P.2d 656 (1997).

Each crime charged by the State includes one or more elements which are explained in a subsequent instruction. The State has the burden of proving each element of a charged crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists.

A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

Clerk's Papers at 29. In contrast, WPIC 4.01 provides:

The defendant has entered a plea of not guilty. That plea puts in issue every element of the crime charged. The State is the plaintiff and has the burden of proving each element of the crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists.

A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.

A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

WPIC 4.01, at 85 (3d ed. 2008). Thus, instruction 9 modified the WPIC by reversing the order of the first two paragraphs and modifying the first three sentences of the paragraph on the State's burden of proof. Because our Supreme Court has unambiguously directed trial courts to use *only* WPIC 4.01, the trial court erred by modifying the instruction. *Bennett*, 161 Wn.2d at 318.

¶15 An erroneous jury instruction, however, is generally subject to a constitutional harmless error analy-

sis. *State v. Brown*, 147 Wn.2d 330, 332, 58 P.3d 889 (2002). We may hold the error harmless if we are satisfied " 'beyond a reasonable doubt that the jury verdict would have been the same absent the error.' " *State v. Bashaw*, 169 Wn.2d 133, 147, 234 P.3d 195 (2010) (internal quotation marks omitted) (quoting *Brown*, 147 Wn.2d at 341). Even misleading instructions do not require reversal unless the complaining party can show prejudice. *State v. Aguirre*, 168 Wn.2d 350, 364, 229 P.3d 669 (2010).

¶16 But in *State v. Castillo*, 150 Wn. App. 466, 472, 208 P.3d 1201 (2009), Division One of this court declined to apply a harmless error analysis to a trial court's failure to use the WPIC, reasoning:

> For several reasons, we reject the State's harmless error argument. First, the supreme court issued its decision in *Bennett* on August 30, 2007, some eight months before Castillo's trial. Thus, there can be no argument that the court and counsel had insufficient time to learn of the express directive to lower courts to use WPIC 4.01.
>
> Second, there is nothing ambiguous about the supreme court's directive: trial courts are to use *only* WPIC 4.01 as the reasonable doubt instruction "until a better instruction is approved." The court neither said nor implied that lower courts were free to ignore the directive if they could find the error of failing to give WPIC 4.01 harmless beyond a reasonable doubt.

(Footnotes omitted.) We decline to follow *Castillo*. Although the *Bennett* court cautioned against altering WPIC 4.01, the court did not hold that modifying WPIC 4.01 automatically constitutes reversible error. Absent such a holding, we decline to treat this error as a structural error and instead follow the general rule that erroneous jury instructions are subject to a constitutional harmless error analysis. *See Bashaw*, 169 Wn.2d at 147; *Brown*, 147 Wn.2d at 332.

¶17 Accordingly, we hold that instruction 9, although contrary to the *Bennett* court's directive, was harmless beyond a reasonable doubt. By reversing the order of the first two paragraphs, instruction 9 emphasized the presumption of innocence. Lundy cannot show that he was

prejudiced by that emphasis. Furthermore, instruction 9 accurately described the State's burden of proof by clearly instructing the jury that the State must prove each element of the crimes charged beyond a reasonable doubt and that the defendant has no burden of proving that a reasonable doubt exists. Because Lundy cannot show that he was prejudiced by the instruction or that it relieved the State of its burden of proof, we are satisfied beyond a reasonable doubt that the jury verdict would have been the same absent the error. *See Bashaw*, 169 Wn.2d at 147.

¶18 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

WORSWICK, A.C.J., and HUNT, J., concur.