IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | |
|---|---|---|
| | ) | No. 70364-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JUSTIN J. FORD, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 29, 2013 |
| | ) | |

BECKER, J. — A jury convicted Justin Ford of possession of heroin after police found drugs and drug paraphernalia in his backpack. He argues the trial court committed reversible error by using a modified version of the standard jury instruction on reasonable doubt. He also contends there was insufficient evidence to support the conviction and the prosecutor's improper comments during closing argument deprived him of a fair trial. We affirm.

Grays Harbor sheriff's deputies encountered Ford when they arrived to serve an arrest warrant on Hali Ochsner in Ochsner's condominium in Westport. When the deputies arrived and came into the living room, Ford was there along with Ochsner and Jordan Lilja. Drugs and numerous items of drug paraphernalia were visible on the coffee table. The officers obtained a search warrant and found heroin in various locations. Ford's black backpack, located on one of the

couches in the living room, was searched and found to contain heroin and digital scales. This discovery led to Ford's arrest.

Ford did not have controlled substances on his person or in his car. The State's evidence to support the charge of possession of heroin relied on the heroin in Ford's backpack. At trial, Ochsner testified that when the police arrived, she started putting drugs and other items from the coffee table into Ford's backpack. She said that none of these items were Ford's. She disputed a deputy's testimony that she told him, before the search took place, that Ford brought the drugs to the apartment. The same deputy testified that when he and his partner entered the living room, Oschner was closer to the backpack than Ford was. Lilja testified that he saw Ochsner put items from the table into Ford's backpack before the police came in. Ford argued in closing that he "never had possession of the controlled substance because it was never in his custody or control. Somebody just throws something in your backpack, you're not possessing it."

The jury found Ford guilty of possession of heroin, and the trial court sentenced him to 24 months.

Ford first assigns error to the court's instruction on reasonable doubt. He contends a manifest constitutional error occurred because a key sentence in the pattern instruction was omitted.

Our Supreme Court, exercising its inherent supervisory power, has directed trial courts to use only the current pattern instruction "to inform the jury of the government's burden to prove every element of the charged crime beyond

2

a reasonable doubt." State v. Bennett, 161 Wn.3d 303, 318, 165 P.3d 1241

(2007). The pattern instruction describes the State's burden as follows,

enclosing in brackets those portions that are used in particular circumstances:

> [T]he [Each] defendant has entered a plea of not guilty. That plea puts in issue every element of [the] [each] crime charged. The [State] [City] [County] is the plaintiff and has the burden of proving each element of [the] [each] crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists [as to these elements].
>
> A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.
>
> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. [If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.]

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL

4.01, at 85 (3d. ed. 2008) (WPIC).

The instruction Ford proposed conformed to WPIC 4.01. The instruction

the State proposed conformed to the pattern instruction except that it lacked the

sentence, "The defendant has no burden of proving that a reasonable doubt

exists [as to these elements]." The trial court gave the instruction as proposed by

the State. The record does not reflect that anyone commented on the

discrepancy, or even noticed it, during the proceedings in the trial court.

In Bennett, the Supreme Court stated, "Even if many variations of the

definition of reasonable doubt meet minimal due process requirements, the

presumption of innocence is simply too fundamental, too central to the core of

the foundation of our justice system not to require adherence to a clear, simple, accepted, and uniform instruction. . . . We have approved WPIC 4.01 and conclude that sound judicial practice requires that this instruction be given until a better instruction is approved." Bennett, 161 Wn.2d at 317-18. Under Bennett, as the State recognizes, the instruction given was erroneous.

This court reversed a conviction where the trial judge gave a completely nonstandard instruction. State v. Castillo, 150 Wn. App. 466, 470, 475, 208 P.3d 1201 (2009). In Castillo, the defendant proposed WPIC 4.01, but the court replied that the WPIC was gobbledygook and refused to give it. Castillo, 150 Wn. App. at 470.

However, erroneous modification to WPIC 4.01 does not automatically constitute reversible error. State v. Lundy, 162 Wn. App. 865, 871-73, 256 P.3d 466 (2011).

Unlike in Castillo, where the defendant objected to the nonstandard instruction, here Ford did not object. Because a violation of the Supreme Court's mandate in Bennett is not in itself an error of constitutional magnitude, Ford is not entitled to review as a matter of right. See State v. Jimenez-Macias, 171 Wn. App. 323, 331-32, 286 P.3d 1022 (2012) (noting that in Lundy the court should have found the instructional error was not of constitutional magnitude instead of reviewing it under the constitutional harmless error standard).

Even if the omission were subject to a constitutional harmless error analysis, the error would not require reversal as long as it did not relieve the State of its burden to prove each element of the crime charged. State v. Brown,

147 Wn.2d 330, 332, 58 P.3d 889 (2002). Ford argues the harmful potential prejudice of the instruction given here was that the jury might believe it was his burden to establish doubt and that the potential for prejudice was realized when the State made a burden shifting remark during argument.

The defense closing argument emphasized that the police did not know what the coffee table looked like before they arrived and that the testimony of Ochsner and Lilja should be believed as to what happened before the police arrived. Defense counsel also suggested that Ochsner might have flushed drugs down the toilet before the police came into the living room. The prosecutor responded in rebuttal:

> Well, she never said that she flushed anything down the toilet *and he certainly would have asked her about it.* There were no drugs in the vehicle, so what. I – I – it's a – that's neither here nor there. And do you really think that Deputy Wilson lied to get a search warrant to search the apartment and the vehicle. Do you really think he lied to do that?

It is difficult to see how this argument about the possible flushing of drugs down the toilet has any relevance to the heroin that was found in Ford's backpack. It is even more difficult to imagine the jury taking it as a direction that Ford had the burden of establishing reasonable doubt.

The instruction in this case did not misstate the State's burden of proof. The instruction correctly communicated the fundamental concept that the defendant was presumed innocent until the State proved each element of the crime beyond a reasonable doubt. There is no reason to believe the jury was influenced by the omission of the sentence stating the defense has no burden.

Next, Ford argues there was insufficient evidence to prove he possessed the heroin in his backpack. The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (citations omitted). In claiming insufficient evidence, the defendant admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. Salinas, 119 Wn.2d at 201.

Ford argues the State failed to prove he constructively possessed the heroin in his backpack. Constructive possession occurs when there is no actual physical possession but there is dominion and control over the substance. Jury Instruction 8; State v. Callahan, 77 Wn.2d 27, 30-31, 459 P.2d 400 (1969). Courts will look at the totality of the situation to determine sufficiency of the evidence of dominion and control. State v. Cote, 123 Wn. App. 546, 549, 96 P.3d 410 (2004).

A defendant's mere proximity to drugs is insufficient to prove constructive possession. State v. George, 146 Wn. App. 906, 920, 193 P.3d 693 (2008). Unlike in George, the evidence here does not boil down to mere proximity. Ochsner testified she put the heroin and other items from the coffee table into the backpack, but Deputy Sheriff Robert Wilson said Ochsner told him at the scene that Ford had brought the drugs into her home. The jury was free to discount Ochsner's credibility and the corroborating testimony of Lilja, and to rely instead on Wilson's testimony. There is no question that the backpack belonged to Ford.

6

He had the right to exclude others from the backpack. Thus, the evidence was sufficient.

Finally, Ford argues he was deprived of a fair trial by prosecutorial misconduct during closing arguments. To establish misconduct, a defendant must show that the remark was "both improper and prejudicial in the context of the entire record and the circumstances at trial." State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008), quoting State v. Hughes, 118 Wn. App. 713, 727, 77 P.3d 681 (2003). The defendant establishes prejudice by showing there is "a substantial likelihood" that the remark affected the jury's verdict. Magers, 164 Wn.2d at 191. If the defendant objected to the allegedly improper comment, we evaluate the trial court's ruling for abuse of discretion. State v. Gregory, 158 Wn.2d 759, 810, 147 P.3d 1201 (2006).

The remark at issue came in the course of the prosecutor's discussion of the term "abiding belief" in the reasonable doubt instruction. The prosecutor characterized it as "knowing that you have done the right thing":

> An abiding belief in the truth of the charge. If you can walk out—if you can find the defendant guilty and walk out of here knowing that you have done the right thing, that you don't have any question in your mind that you've done the right thing, you've been convinced beyond a reasonable doubt.

Ford objected. The trial court referred the jury to the instructions and told the jury, "The instructions speak for themselves. Remarks and statements of counsel are not evidence." The State made no further reference to reasonable doubt. At sentencing, Ford moved for a new trial based on the remark about "the right thing." The trial court denied the motion.

The remark was improper. Attempts to describe the meaning of reasonable doubt in terms other than the approved jury instruction are chancy at best. Nevertheless, we perceive no likelihood that the remark affected the jury's verdict. It bore no relationship to the omission, in instruction 7, of the sentence stating that the defendant has no burden of proving that a reasonable doubt exists. The prosecutor consistently affirmed that the State had the burden of proof, as did defense counsel. Immediately after the objectionable comment, the trial court correctly referred the jury to the instructions, saying "The jury will follow the instructions." We presume the jury followed the instructions given. State v. Brown, 132 Wn.2d 529, 618, 940 P.2d 546 (1997), cert. denied, 523 U.S. 1007 (1998).

Affirmed.

WE CONCUR: