FILED
COURT OF APPEALS
DIVISION II

2013 OCT 15 AM 8: 56

STATE OF WASHINGTON

BY_____
              DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | | |
|---|---|---|
| STATE OF WASHINGTON,<br><br>                    Respondent,<br><br>v.<br><br>BRANDON L. DUGGER,<br>                    Appellant. | | No. 42792-3-II<br><br>UNPUBLISHED OPINION |

DALTON, J.P.T.[1] — Brandon L. Dugger appeals his conviction and sentence on one count of second degree rape with a special finding that the victim was less than 15 years old at the time of the offense. He argues that the (1) trial court gave an erroneous burden of proof and reasonable doubt jury instruction; (2) the trial court erred in denying his request for a mistrial for an allegedly improper and prejudicial comment by the prosecutor during closing argument; and (3) the sentencing court imposed community custody conditions that exceeded statutory authority and violated his constitutional rights.

We do not reach the jury instruction claim because it is not preserved. We hold that the trial court did not abuse its discretion in denying Dugger's request for a mistrial. We uphold the community custody condition prohibiting Dugger from contact with juveniles under the age of 18 because it is reasonably necessary to protect them from future harm. Finally, we accept the

---

[1] Judge Jeanette Dalton is serving as judge pro tempore of the Court of Appeals, Division II, under CAR 21(c).

State's concession that the condition prohibiting Dugger from possessing a cellular telephone with photograph storage capability exceeded the trial court's statutory sentencing authority because it is not reasonably crime related and, thus, it should be stricken. Accordingly, we affirm Dugger's conviction but remand for correction of the judgment and sentence.

FACTS

In the late hours of November 27, 2010, and the early hours of November 28, 2010, 14-year-old SMH[2] was with a group of friends when one of her friends arranged to meet Brandon Dugger[3] to buy marijuana. The group smoked a small amount of marijuana and then followed Dugger to his friend's apartment to retrieve the marijuana that he had agreed to sell them. When they arrived at the apartment, it was locked. Dugger said that he could gain entry through a downstairs window, and he suggested that SMH join him because she was the smallest of the group. But they discovered the window was locked.

Under the guise of reuniting SMH and her friends, Dugger led SMH to various locations—a garage across from the high school, a park, and finally to a residential garage. Eventually, SMH became tired of waiting for her friends to arrive. When she attempted to leave, Dugger wrapped his phone charger cord around her neck, threatened her with a knife, and directed her to a secluded ravine. Hidden from public view, he raped her. After the rape, SMH and Dugger went their separate ways. SMH called 911 from the bus station and police officers met her there and escorted her to the hospital for treatment.

The State charged Dugger with second degree rape and third degree child rape. At trial, Dugger admitted that he had sex with SMH, but he testified that it was consensual. In closing

---

[2] We refer to SMH, a minor, by her initials to protect her privacy.

[3] Dugger was 21 years old at the time.

argument, defense counsel portrayed SMH as having falsely accused Dugger of forcible rape to avoid discipline for staying out late and smoking marijuana. The prosecutor initiated rebuttal argument by stating, "It's insulting. It's insulting for someone to stand here and make Mr. Dugger—." Report of Proccedings (RP) at 312. Dugger objected and moved for a mistrial, arguing that the prosecutor's comments disparaged defense counsel. The trial court ruled that the prosecutor's comments were not misconduct and denied Dugger's motion for a mistrial.

Without objection, the trial court instructed the jury on the burden of proof and reasonable doubt as follows:

> The defendant has entered a plea of not guilty to each of these charges. Those pleas put in issue every element of the crimes charged. The State is the plaintiff and has the burden of proving each element of the crimes beyond a reasonable doubt.
> A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.
> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly and carefully considering all of the evidence or lack of evidence. If, after such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

Clerk's Papers (CP) at 20.

The jury found Dugger guilty on both counts and returned a special verdict that SMH was under 15 years of age at the time of the crime.[4] The trial court sentenced Dugger to a minimum of 25 years to a maximum of life imprisonment as required by RCW 9.94A.570(3)(c)(ii). The trial court also sentenced Dugger to community custody for life. The trial court imposed as community custody conditions that Dugger have no contact with juveniles less than 18 years old,

---

[4] After trial, the court dismissed the charge of third degree child rape on double jeopardy grounds.

and that he not possess a cellular telephone with photograph storage capability. Dugger timely appeals his conviction and community custody conditions.

ANALYSIS

I. JURY INSTRUCTION

For the first time on appeal, Dugger challenges the trial court's jury instruction on the burden of proof and definition of reasonable doubt. He argues that the modified Washington Practice Jury Instruction (WPIC) 4.01 violated the Supreme Court's directive in *State v. Bennett*, 161 Wn.2d 303, 317-18, 165 P.3d 1241 (2007) and violated due process by shifting the burden of proof to the defendant and undermining the presumption of innocence. The State argues that the modified WPIC 4.01 instruction did not prejudice Dugger. We agree with the State that the erroneous jury instruction did not prejudice Dugger because it did not relieve the State of its burden to prove every element of the crime beyond a reasonable doubt. Because Dugger does not demonstrate that he was actually prejudiced by the alleged error, the unpreserved claim of error does not qualify for review under RAP 2.5(a)(3). Thus, we do not reach his jury instruction challenge.

Any objections to jury instructions must be put in the record to preserve review. *State v. Sublett*, 176 Wn.2d 58, 75-76, 292 P.3d 715 (2012). An appellate court may refuse to review unpreserved claims of error except claims of manifest error affecting a constitutional right. RAP 2.5(a)(3); *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011). "'[T]he appellant must identify a constitutional error and show how the alleged error actually affected the [appellant]'s rights at trial.'" *Gordon*, 172 Wn.2d at 676 (second alteration in original) (internal quotation marks omitted) (quoting *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009)). An error is "manifest" if it is "so obvious on the record that the error warrants appellate review." *O'Hara*,

No. 42792-3-II

167 Wn.2d at 99-100. But the appellant must also show "actual prejudice, i.e., there must be a 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'" *Gordon*, 172 Wn.2d at 676 (alteration in original) (internal quotation marks omitted) (quoting *O'Hara*, 167 Wn.2d at 99). We preview the merits of the alleged error to determine whether the claim is likely to succeed. *State v. Walsh*, 143 Wn.2d 1, 8, 17 P.3d 591 (2001).

A trial court's failure to use WPIC 4.01 to instruct a jury on burden of proof and reasonable doubt is error. *State v. Lundy*, 162 Wn. App. 865, 871, 256 P.3d 466 (2011). But the error is subject to constitutional harmless error analysis because the Supreme Court's directive to use WPIC 4.01 was an exercise of its supervisory powers to enact procedural rules rather than an invocation of its constitutional error-correcting authority. *Lundy*, 162 Wn. App. at 872; *contra State v. Castillo*, 150 Wn. App. 466, 473, 208 P.3d 1201 (2009). Here, the trial court committed an obvious error by omitting the last sentence of the first paragraph of WPIC 4.01.[5] The burden of proof and presumption of innocence are grounded in the due process clause. U.S. CONST.

---

[5] WPIC 4.01 provides:

[The] [Each] defendant has entered a plea of not guilty. That plea puts in issue every element of [the] [each] crime charged. The [State] [City] [County] is the plaintiff and has the burden of proving each element of [the] [each] crime beyond a reasonable doubt. **The defendant has no burden of proving that a reasonable doubt exists [as to these elements].**

A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.

A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. [If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.]

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01, at 85 (3d ed. 2008) (boldface added).

5

amend. XIV; WASH. CONST. art. I, § 3; *State v. Woods*, 143 Wn.2d 561, 594, 23 P.3d 1046 (2001). But Dugger does not show that the error actually affected his rights at trial. *Gordon*, 172 Wn.2d at 676.

Jury instructions must define reasonable doubt and clearly communicate that the State carries the burden of proof. *Bennett*, 161 Wn.2d at 307. Instructing the jury in a manner that relieves the State of its burden to prove every element of an offense beyond a reasonable doubt violates due process and requires automatic reversal. *Bennett*, 161 Wn.2d at 307. But not every omission or misstatement in a jury instruction relieves the State of its burden. *State v. Brown*, 147 Wn.2d 330, 339, 58 P.3d 889 (2002). The question before us is whether omitting from WPIC 4.01 the sentence: "The defendant has no burden of proving that a reasonable doubt exists" relieves the State of its burden to prove every element of an offense beyond a reasonable doubt by allowing a jury to infer that Dugger had a burden of establishing enough doubt to acquit. 11 WPIC 4.01, at 85. The United States Supreme Court has approved a reasonable doubt instruction that does not include such a sentence. *Victor v. Nebraska,* 511 U.S. 1, 7, 18, 22-23, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994). But in that case, the issue was whether the *definition* of reasonable doubt lowered the State's burden of proof. *Victor*, 511 U.S. at 22-23. The *Victor* Court did not decide the issue before this court—whether an admonition that the defendant has no burden to prove reasonable doubt is required for proper allocation of the burden of proof.

Even without the omitted sentence, the jury instructions state unequivocally that the State has the burden to prove each element of the crime beyond a reasonable doubt.[6] They further instruct that the defendant is presumed innocent and that this presumption continues unless

---

[6] The trial court's preliminary instructions to the jury panel before voir dire may also have defined reasonable doubt, but neither party designated that portion of the record for appeal.

during deliberations the jury finds the presumption has been overcome by the evidence beyond a reasonable doubt. Contrary to Dugger's argument, taken as a whole, the instructions correctly conveyed that the State had the burden of proof on every element, and there is no reasonable likelihood that the jury interpreted the instructions to infer that the defendant either had any burden to prove that reasonable doubt existed or that the defendant had any obligation to present evidence to prove he was not guilty. *See Victor*, 511 U.S. at 6 (recognizing that "the proper inquiry is not whether an instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it") (emphasis in original) (quoting *Estelle v. McQuire*, 502 U.S. 62, 72, & n.4, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1981)); *State v. Clausing*, 147 Wn.2d 620, 626, 56 P.3d 550 (2002) (stating that jury instructions are to be read as a whole).

Because the challenged jury instruction accurately states that the burden of proof is entirely the State's, Dugger cannot show that the trial court's use of the nonconforming WPIC 4.01 instruction had practical and identifiable consequences at his trial. *See Gordon*, 172 Wn.2d at 676. Thus, Dugger's claim does not fall within the narrow exception of RAP 2.5(a)(3). *See Gordon*, 172 Wn.2d at 676. Accordingly, we do not reach the unpreserved error.

## II. PROSECUTORIAL MISCONDUCT

Dugger next argues that the trial court abused its discretion by denying his motion for a mistrial because the State committed prosecutorial misconduct during closing argument by disparaging defense counsel. The State responds that the prosecutor's comments in closing argument were not improper or prejudicial and, thus, the trial court properly denied Dugger's mistrial motion. We agree with the State.

Prosecutorial misconduct may deprive a defendant of his right to a fair trial. *State v. Jones*, 144 Wn. App. 284, 290, 183 P.3d 307 (2008). A defendant claiming such misconduct must prove that the prosecutor's conduct was both improper and prejudicial "'in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.'" *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006) (quoting *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997)). A prosecutor's improper comments are prejudicial "only where 'there is a *substantial likelihood* the misconduct affected the jury's verdict.'" *McKenzie*, 157 Wn.2d at 52 (emphasis in original) (quoting *Brown*, 132 Wn.2d at 561).

"It is improper for the prosecutor to disparagingly comment on defense counsel's role or impugn the defense lawyer's integrity." *State v. Thorgerson*, 172 Wn.2d 438, 451, 258 P.3d 43 (2011). "The trial judge is generally in the best position to determine whether the prosecutor's actions were improper and whether, under the circumstances, they were prejudicial." *State v. Ish*, 170 Wn.2d 189, 195-96, 241 P.3d 389 (2010). Thus, we review a trial court's ruling on an allegation of prosecutorial misconduct for abuse of discretion. *Ish*, 170 Wn.2d at 195-96.

In *Thorgerson*, our Supreme Court held that a prosecutor committed misconduct by accusing defense counsel of engaging in "'sl[e]ight of hand'" tactics and by using disparaging terms like "'bogus'" and "'desperation'" to describe the defense. 172 Wn.2d at 450-52 (alteration in original). But the court also held that the misconduct was not likely to have altered the outcome of the case because the victim's testimony was consistent throughout trial and the disparaging remarks essentially told the jury to disregard what the prosecutor believed was irrelevant evidence. *Thorgerson*, 172 Wn.2d at 452.

Here, after defense counsel's closing, the prosecutor commenced rebuttal by stating, "It's insulting. It's insulting for someone to stand here and make Mr. Dugger—." RP at 312. The prosecutor did not finish her sentence because defense counsel interrupted with an objection. The trial court recessed. The defense moved for a mistrial, arguing that the prosecutor's remarks disparaged and demeaned defense counsel, which deprived Dugger of a fair hearing. The trial court denied defense counsel's motion.[7]

Here, Dugger contends that the prosecutor was criticizing the defense's strategy to challenge SMH's credibility and, thus, the prosecutor was implicitly professing the State's opinion of Dugger's guilt. This inference from the prosecutor's argument is speculative. The prosecutor was interrupted by defense counsel before the insulting aspect of defense counsel's argument was identified. Contrary to Dugger's argument, the prosecutor's ambiguous, incomplete statement was not more inflammatory than that in *Thorgerson*, where the prosecutor repeatedly accused the defense of deceiving the jury. 172 Wn.2d at 450-52.

Here, the trial court properly reviewed the prosecutor's statement, refused to speculate about what the prosecutor may have said if she had not been interrupted by objection, determined that the statement heard by the jury was not improper, and denied counsel's motion for a mistrial. Moreover, any negative impact on the jury would be minimized because the jury had been instructed not to consider the arguments of counsel as evidence. Because Dugger has not proved that the trial court abused its discretion in denying his motion for a mistrial based on alleged prosecutorial misconduct, his claim fails.

---

[7] Defense counsel did not request a curative instruction for the alleged misconduct as an alternative to his unsuccessful motion for a mistrial.

9

III.     COMMUNITY CUSTODY CONDITIONS

Finally, Dugger asserts that the trial court imposed certain community custody conditions that exceeded statutory authority and violated his constitutionally protected freedoms of speech, association, and movement. "We review de novo whether the trial court had statutory authority to impose community custody conditions. If the condition is statutorily authorized, we review the [trial] court's decision to impose the condition for an abuse of discretion." *State v. Snedden*, 166 Wn. App. 541, 543, 271 P.3d 298 (2012) (citation omitted). Abuse of discretion occurs when the decision is exercised on untenable grounds or for untenable reasons. *Snedden*, 166 Wn. App. at 543. Statutorily authorized conditions are usually upheld if reasonably crime related. *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008).

Crime-related prohibitions limiting a convicted defendant's fundamental rights "must be 'sensitively imposed' so that they are 'reasonably necessary to accomplish the essential needs of the State and public order.'" *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 377, 229 P.3d 686 (2010) (quoting *Warren*, 165 Wn.2d at 32); *see State v. Riles*, 135 Wn.2d 326, 346-47, 957 P.2d 655 (1998) (applying same standard to restrictions of First Amendment freedom of association right), *abrogated on other grounds, State v. Sanchez Valencia*, 169 Wn.2d 782, 239 P.3d 1059 (2010); *State v. Riley*, 121 Wn.2d 22, 37-38, 846 P.2d 1365 (1993) (same); *City of Tacoma v. Luvene*, 118 Wn.2d 826, 840 n.5, 827 P.2d 1374 (1992) (noting that the right to move about freely is a constitutionally protected liberty within the sensitive First Amendment area).

A. No Contact with Juveniles under 18 Years Old

Dugger argues that the trial court's imposition of a community custody condition prohibiting him from contact with juveniles under age 18 violates his constitutionally protected

rights of free speech, association, and movement. Because the record supports that the no-contact condition is reasonably necessary under the circumstances of this case, we uphold it.

The Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, authorizes the trial court to impose "crime-related prohibitions" as a condition of sentence, including ordering defendants to "[r]efrain from direct or indirect contact with the victim of the crime or a specified class of individuals." RCW 9.94A.505(8); RCW 9.9A.703(3)(b). Here, the trial court imposed a condition prohibiting "contact with juveniles under 18 years of age." CP at 42, 45. An order prohibiting contact with all juveniles implicates fundamental freedoms of speech, association, and movement.[8] U.S. CONST. amends. I, V, XIV; WASH. CONST. art. I, §§ 3, 5; see Riles, 135 Wn.2d at 347; Luvene, 118 Wn.2d at 840 n.5. But a convicted defendant's fundamental rights, including freedom of association, may be restricted if reasonably necessary to accomplish the essential needs of the State and public order. Riles, 135 Wn.2d at 347; Riley, 121 Wn.2d at 37-38. Preventing harm to children is a compelling State interest. State v. Ancira, 107 Wn. App. 650, 653-54, 27 P.3d 1246 (2001); see Riles, 135 Wn.2d at 346-47 (upholding a condition prohibiting contact with "any-minor-age children" when the defendant had been convicted of raping a six-year-old child).

Thus, the question is whether the condition prohibiting all contact with juveniles under 18 years old is reasonably necessary to prevent Dugger from committing further sexual crimes against children. We hold that it is. Dugger was convicted of forcibly raping a 14-year-old child. As in Riles, the trial court was within its discretion to consider it necessary to protect children to impose a condition prohibiting Dugger from contact with minor aged children.

---

[8] As Dugger suggests, such an order potentially limits his interaction with friends and family members, and prohibits him from frequenting places where minors are likely to be found.

11

Our Supreme Court recently made clear that the duration, as well as the scope, of no-contact orders must be sensitively imposed so that it is reasonably necessary to accomplish the essential needs of the State and public order. *Rainey*, 168 Wn.2d at 381. In *Rainey,* the court struck a lifetime no-contact order prohibiting Rainey from all contact with *his* child because the court was unable to determine from the record whether, in the absence of any express justification by the trial court, a lifetime no-contact order was reasonably necessary to achieve the State's interest in protecting the child from Rainey. 168 Wn.2d at 381-82. Recognizing the "fact-specific nature of the inquiry," the court remanded to the trial court for resentencing so that the court could "address the parameters of the no-contact order under the reasonably necessary standard." *Rainey,* 168 Wn.2d at 382.

Here, the sentencing court did not expressly justify the lifetime no-contact order, but our independent review reveals that the no-contact order's scope and duration were reasonably necessary to protect children from future harm by Dugger. The record reflects that Dugger used violence and threats of violence to rape a 14-year-old child. He targeted a child who was small in stature and possibly under the influence of drugs. He went to great effort to get his victim alone and keep her separated from her friends. When she tried to leave, he wrapped a cord around her neck, threatened her with a knife, directed her to a secluded ravine, and raped her. Dugger did not take responsibility for his crime at trial or sentencing and he did not demonstrate remorse or empathy toward the victim. Based on these circumstances, we hold that the trial court had ample evidence to conclude that Dugger posed a future threat to other juveniles under the age of 18 and that imposing a no-contact order for the statutory maximum of his punishment

was reasonably necessary for their protection.[9] Accordingly, we uphold the sentencing condition prohibiting Dugger from all contact with juveniles under 18 years old.

B. No Cellular Telephone with Photograph Storage Capability

Dugger also asserts that the trial court's imposition of a condition prohibiting him from possessing, using, or having access to any cellular telephone with photograph storage capability exceeds statutory authority. The State concedes that the condition is not crime-related and, thus, the trial court lacked authority under the SRA to impose it.[10] We accept the State's concession and remand to the trial court to strike the condition.

Accordingly, we affirm Dugger's conviction, reverse the community custody condition prohibiting Dugger from possessing a cellular telephone with photograph storage capability, and

---

[9] Dugger may bring a post sentencing motion for relief should his circumstances change—making the condition too onerous—or if certain conditions necessary to safeguard the protected class against further harm are met. CrR 7.8(b)(5) (providing that the court may relieve a party from a final judgment, order, or proceeding for "[a]ny other reason justifying relief from the operation of the judgment").

[10] As an initial matter, the State contends that the cell phone condition was not adopted by the trial court because it was contained in an unsigned appendix F to the DOC presentence investigation. We disagree. The judgment and sentence state that Dugger must comply with any other recommendations made by the DOC in the presentence report/investigation, which included appendix F.

13

No. 42792-3-II

remand to the trial court for entry of a corrected judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

DALTON, J.P.T.

We concur:

QUINN-BRINTNALL, J.

JOHANSON, A.C.J.

14