# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49184-2-II |
| Respondent, | |
| v. | |
| JOHN A. CHACON, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — John Chacon appeals his convictions of assault in the second degree and criminal trespass in the first degree. We conclude that the trial court did not err by declining to give an inferior degree offense instruction, and that the prosecutor did not commit misconduct. We do conclude that the trial court erred in instructing the jury on reasonable doubt, but the error was harmless beyond a reasonable doubt.[1] We affirm.

### FACTS

On February 16, 2016, Chacon sat inside the Senior Center, an area in The Olympia Center building reserved for members at least 55 years old and their guests. Chacon had used The Olympia Center's bathroom and shower on previous occasions.

Seeing that Chacon was a young man, the director of the Senior Center informed him that the Senior Center had age restrictions. Chacon stated, "I'll do whatever I want." 1 Report of Proceedings (RP) at 92. The director asked Chacon to leave, but he refused. A security guard

---

[1] Chacon also requests that we waive appellate costs in this matter. Pursuant to RAP 14.2, we defer this matter to our commissioner in the event that the State files a cost bill and Chacon objects.

asked Chacon for his age. When Chacon stated that he was 35 years old, the security guard informed him that according to the Senior Center policies posted at the entryway, Chacon did not meet the qualifications. Chacon responded, "If you don't get the f**k away from me I'm going to take you outside and beat the f**k out of you." 1 RP at 68.

The director called the Olympia Police Department. When police officers arrived, an Olympia Center employee prepared a formal trespass notice to be issued to Chacon. Chacon walked out of the building. The police officers followed Chacon and asked him to sign the trespass notice. He refused. They advised Chacon that he would be arrested for criminal trespass if he went back inside The Olympia Center. Chacon responded, "I'll see you tomorrow." 2 RP at 253.

The following day, an Olympia Center employee saw Chacon in the building. The employee informed Chacon that he was not supposed to be in the building and that someone might call the police. When Chacon ignored him, another employee called the police.

Police officers arrived and saw Chacon sitting at a table in the Senior Center drinking coffee. They informed Chacon that he was under arrest for trespass and placed him in handcuffs. Two officers, including Officer Jeffrey Davis, escorted Chacon out of the Senior Center. At one point, Chacon became uncooperative and dropped his weight to the floor. Because of his size, the officers could not carry Chacon and were forced to drag him to the front door. Chacon eventually stood and walked to the officers' patrol car.

At the patrol car, Chacon used his body to try to block the rear passenger door from opening. He became more aggressive and uncooperative. The officers repeatedly asked Chacon to move, but he said, "F**k you, I'm not moving." 2 RP at 385. Davis tried to move Chacon by pushing his shoulders, but Chacon resisted.

To overcome Chacon's resistance, Davis delivered a "knee strike"[2] with his right knee to a soft area of Chacon's thigh. 2 RP at 386. The knee strike was ineffective. As Davis continued to attempt to move Chacon, Chacon shifted his weight towards Davis and struck Davis with his leg. He hit Davis in the interior edge of his right knee. Davis later testified, "[Chacon's strike] was similar to the first one I had given to him in a close tight proximity, within 12 to 18 inches of movement." 2 RP at 389.

Davis felt "intense and immediate pain, helplessness" and a "sickening pop." 2 RP at 389. Davis's knee cap moved from its normal position and his leg locked at a 90-degree angle. Davis could not move his leg. He stood on his left leg and held onto the car door for stability. When the other officers noticed Davis let go of Chacon, they took Chacon to the ground.

At some point, Davis felt his knee pop back into place. Able to put a small amount of pressure on his right leg, Davis immediately assisted the other officers. He secured Chacon's legs with his baton and left knee. Davis subsequently asked one of the officers to take his position at Chacon's legs, saying "I can't do this anymore." 2 RP at 268. Davis "looked a little white." 2 RP at 269.

Davis had a red and swollen knee. One officer observed that Davis was "not his normal self" and "unsteady on his feet." 2 RP at 345. A medical examination showed that Davis suffered a dislocated kneecap. He was placed on light duty and underwent physical therapy. He was not cleared for active duty for approximately 14 weeks.

---

[2] A "knee strike" is a "pain compliance" technique law enforcement officers use to temporarily deaden the targeted muscle and incapacitate the person. 2 RP at 387.

None of the officers saw Chacon kick Davis. Chacon did not complain of any injuries. The State charged Chacon with assault in the second degree and criminal trespass in the first degree.

I.    JURY INSTRUCTIONS

At trial, both parties submitted proposed jury instructions. Regarding the assault in the second degree charge, Chacon requested an inferior degree offense instruction of assault in the third or fourth degree. He argued that a jury could find that the injury to the officer did not amount to substantial bodily harm, an element required to establish assault in the second degree but not the inferior degrees.

The trial court denied Chacon's request, ruling that Chacon presented no evidence that Davis suffered anything other than substantial bodily harm. The evidence established that Davis suffered a dislocated kneecap which required him to be off-duty for 14 weeks.

The court instructed the jury on burden of proof and reasonable doubt as follows:

> The defendant has entered a plea of not guilty to the charges. That plea puts in issue every element of the crimes charged. The State is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt.
> A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.
> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly and carefully considering all of the evidence or lack of evidence. If, after such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

Clerk's Papers (CP) at 30-31 (Instr. 3). Chacon did not object to this instruction.[3]

---

[3] Chacon submitted proposed jury instructions, but the record does not include them. The State's proposed reasonable doubt instruction included the sentence, "The defendant has no burden of proving that a reasonable doubt exists as to these elements." Suppl. CP at 66 (Proposed Instr. 4). The State argues that the trial court's omission of the sentence was an oversight.

II.     CLOSING ARGUMENT

During closing arguments, the prosecutor stated:

> And sometimes we'll hear from folks . . .  I really believe he did it, but you didn't prove it to me. . . .  If you believe he did it, then I did prove it to you because remember . . . you came in here as a blank slate. . . .  The only information you got in this case came from the witness stand, came from the exhibits.  The only way you can say to yourself when you walk out, I really believe he did it, is if you have been given that information and you have formed that belief based on that information.  You don't get to that point if it hasn't been proved to you beyond a reasonable doubt.  So please, hold the State to the burden of proof that you are instructed on and not a higher level or a greater level of proof.

3 RP at 514.  The prosecutor continued in rebuttal:

> Folks, there is no question [Chacon] knew he was not supposed to be there [at the Senior Center]. And all of that other stuff with the ceramic coffee cup and the poor gal behind the counter who didn't tell him to leave, that is white noise, ladies and gentlemen. Listen, listen, listen, buzz, buzz, buzz, buzz.  Don't pay attention to the facts and the legal instructions that you have been given.

3 RP at 576.  The prosecutor concluded:

> [T]his idea that [Chacon] didn't know what was happening, all these things just sort of happen and he wasn't involved in them.  It's like that commercial, right, with the old gals that are trying to do Facebook. . . .  She's like look here, I put you on my wall, and there's one of the ladies that is sitting there going what? But . . . that's not how this works. . . .  [A]nd she's like no, it is. . . .  [S]he doesn't like what she's saying, she says, "I unfriend you," because that's her understanding of Facebook and that's how she wants it to be.  And the entire picture or premise of it is like that's not how this works, that's not how any of this works.  And that is the white noise that counsel has asked you to accept.
> Here is this version of events that has zero support in evidence, it didn't happen, and [Chacon's] behavior should be excused because, you know, that's just the way it is.  It should be that way.  That's not how this works, that's not how any of this works.

3 RP at 581-82.  Chacon did not object to the above closing arguments.

After deliberations, the jury returned a guilty verdict on both charges.  Chacon appeals.

ANALYSIS

I.   INFERIOR DEGREE OFFENSE INSTRUCTION

Chacon argues that the trial court violated his "unqualified right" to give an applicable inferior degree offense jury instruction on assault in the third degree against a police officer. Br. of Appellant at 7, 10. We disagree.

RCW 10.61.003 provides that a jury may find a defendant not guilty of the charged offense, but guilty of an offense with an inferior degree. Under this statute, parties have a statutory right to an inferior degree offense instruction. *See State v. Corey*, 181 Wn. App. 272, 277, 280, 325 P.3d 250 (2014) (affirming, over defendant's objection, a conviction based on a lesser degree instruction proposed by the State).

The party requesting an instruction on an inferior degree offense must show: "'(1) the statutes for both the charged offense and the proposed inferior degree offense "proscribe but one offense"; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense.'" *State v. Fernandez–Medina*, 141 Wn.2d 448, 454, 6 P.3d 1150 (2000) (quoting *State v. Peterson*, 133 Wn.2d 885, 891, 948 P.2d 381 (1997) (quoting *State v. Foster*, 91 Wn.2d 466, 472, 589 P.2d 789 (1979)).

The third requirement is the factual component of the test. When determining whether the evidence was sufficient to support an inferior degree offense instruction, we view the evidence in the light most favorable to the party that requested the instruction. *Fernandez–Medina*, 141 Wn.2d at 455–56. However, the evidence must affirmatively establish the defendant's theory of the case, not merely allow the jury to disbelieve evidence of guilt. *Fernandez–Medina*, 141 Wn.2d at 456.

An inferior degree offense instruction must be given if the evidence would permit a jury to rationally convict only on the inferior offense and acquit on the greater offense. *Fernandez–Medina*, 141 Wn.2d at 456. As long as the defendant presents sufficient factual evidence to support an inferior degree instruction, it does not matter that the instruction would be inconsistent with other portions of the defendant's case. *Fernandez–Medina*, 141 Wn.2d 459-60. We review de novo the trial court's decision to give an inferior degree offense instruction. *Corey*, 181 Wn. App. at 276.

Here, the parties do not seem to contest that the first two prongs of the inferior degree test are satisfied. Therefore, this case turns on the factual component of the test.

To convict on assault in the second degree, the State had to prove that Chacon assaulted Davis by recklessly inflicting substantial bodily harm. RCW 9A.36.021(1)(a). "'Substantial bodily harm' means bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part[.]" RCW 9A.04.110(4)(b). Chacon would be guilty of assault in the third degree if he assaulted under circumstances not amounting to assault in the first or second degree, and assaulted a law enforcement officer who was performing his or her official duties at the time of the assault.[4] RCW 9A.36.031(1)(g).

Chacon argues that the jury could have concluded that he committed assault in the third degree because the evidence established that Davis's knee strike could have caused his knee dislocation, that the distance between Davis and Chacon was limited, and that none of the officers saw Chacon kick Davis.

---

[4] Chacon only argues the assault against a police officer prong of assault in the third degree.

7

Chacon's argument is based on speculation and a misinterpretation of the evidence. The testimony from Davis's physician was that it was *possible* to dislocate a kneecap if Davis hit something with the corner of his kneecap rather than straight on. The physician also testified that a person would immediately notice a dislocated kneecap. Davis testified that his knee strike against Chacon was ineffective. But when Chacon struck Davis's knee, the pain was immediate and intense. His knee locked, he could not walk, and he held onto the patrol car door for stability.

The jury heard no evidence that Davis's knee strike to Chacon caused his dislocated knee. Nor did the jury hear evidence that substantial bodily harm from a kick could only occur at a specific distance between two persons. Although the jury heard testimony that a knee strike could possibly dislocate a kneecap, that evidence alone is not enough to entitle Chacon to an inferior degree offense instruction. *See Fernandez–Medina*, 141 Wn.2d at 456. The evidence may have allowed the jury to disbelieve evidence of Chacon's guilt, but it did not affirmatively establish Chacon's theory of the case. *Fernandez–Medina*, 141 Wn.2d at 456. Therefore, the trial court did not err by denying Chacon's request to instruct the jury on assault in the third degree.

II.    PROSECUTORIAL MISCONDUCT

Chacon argues that the prosecutor committed misconduct during closing argument. We conclude that although some of the prosecutor's remarks were not proper, Chacon cannot show any resulting prejudice.

An appellant claiming prosecutorial misconduct must demonstrate that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). To establish prejudice, the appellant must then show that the improper comments had a substantial likelihood of affecting the verdict. *Emery*, 174 Wn.2d at 760.

8

If the defendant failed to object to the allegedly improper comments at trial, the defendant must also show that the comments were "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. The appellant must show that no curative instruction would have eliminated the prejudicial effect, and the misconduct resulted in prejudice that had a substantial likelihood of affecting the verdict. *Emery*, 174 Wn.2d at 761. The focus of this inquiry rests more on whether the resulting prejudice could have been cured, rather than the flagrant or ill-intentioned nature of the remarks. *Emery*, 174 Wn.2d at 762.

A.      Burden of Proof

Chacon first argues that the prosecutor improperly mischaracterized and minimized the State's burden of proof.

The State bears the burden of proving its case beyond a reasonable doubt, and the defendant bears no burden. *Emery*, 174 Wn.2d at 760. During closing argument, a prosecutor has wide latitude to argue reasonable inferences from the evidence. *State v. Thorgerson*, 172 Wn.2d 438, 453, 258 P.3d 43 (2011). But a prosecutor's argument misstating, minimizing, or trivializing the law regarding the burden of proof can be improper. *State v. Johnson,* 158 Wn. App. 677, 684-85, 243 P.3d 936 (2010). As are arguments that shift the burden of proof to the defense. *Thorgerson*, 172 Wn.2d at 453.

During closing argument, the prosecutor stated that if the jury believed Chacon "did it," then she proved that Chacon committed the crimes. 3 RP at 514. The prosecutor then stated that the only way the jury could believe Chacon committed the crimes is if it "ha[d] been given that information" and "formed that belief based on that information." 3 RP at 514. She continued, "You don't get to that point if it hasn't been proved to you beyond a reasonable doubt," and told

the jury to "hold the State to the burden of proof that you are instructed on[.]" 3 RP at 514. Chacon did not object.

Nothing in the prosecutor's arguments suggests that she misstated or minimized the State's burden of proof. To the contrary, the prosecutor told the jury to hold the State to its burden of proof as instructed by the court. Therefore, we conclude that the prosecutor did not make any improper argument on this basis.

B.     Disparagement

Chacon next argues that the prosecutor committed misconduct by mischaracterizing[5] and disparaging his attorney's defense theory rather than attacking it based on the evidence presented at trial. He argues that the prosecutor improperly compared his attorney to "old gals" in a television commercial who were satirized for their ineptitude with technology. Br. of Appellant at 15.

"It is improper for the prosecutor to disparagingly comment on defense counsel's role or impugn the defense lawyer's integrity." *Thorgerson*, 172 Wn.2d at 451. Disparaging defense counsel, however, is significantly different from disparaging defense counsel's argument. *See Thorgerson,* 172 Wn.2d at 451-52. It is not error for a prosecutor to argue that the evidence does not support the defendant's theory. *State v. Graham*, 59 Wn. App. 418, 429, 798 P.2d 314 (1990).

During rebuttal, the prosecutor stated, "Listen, listen, listen, buzz, buzz, buzz, buzz," arguing that Chacon's attorney was distracting the jury with irrelevant facts and that he was telling the jury to ignore the court's instructions. 3 RP at 576. The prosecutor equated the defense theory as "white noise." 3 RP at 576. Chacon did not object.

---

[5] Chacon does not argue how the prosecutor's comments mischaracterized his attorney's defense theory. He argues that the prosecutor "dismiss[ed] Mr. Chacon's arguments as an attempt to divert the jury's attention from the real issues." Br. of Appellant at 15. But these comments did not mischaracterize the attorney's defense theory. Chacon's arguments focus on disparagement of his attorney.

These remarks impugned Chacon's attorney's integrity because they implied that he attempted to deceive the jury and steer it away from the court's instructions. Although the prosecutor's remarks were inappropriate, Chacon has not shown that there was a substantial likelihood that the remarks affected the jury's verdict. Additionally, a curative instruction would have eliminated any prejudicial effect.

As to the prosecutor's alleged comparison of Chacon's attorney to "old gals" in a television commercial, Chacon mischaracterizes the prosecutor's argument. 3 RP at 581. During rebuttal, the prosecutor compared Chacon's argument—that "he didn't know what was happening, all these things just sort of happen and he wasn't involved in them,"—to a woman in a television commercial. 3 RP at 581. The woman in the commercial firmly believed that she understood how to use Facebook, even though her understanding was completely wrong. 3 RP at 581.

The prosecutor argued that even though Chacon said that "it didn't happen, and his behavior should be excused because . . . that's just the way it is," he should not be acquitted of the charges because his version of events was unsupported by the evidence. 3 RP at 581. These comments did not disparage Chacon's attorney's role or impugn his integrity.

For the foregoing reasons, we disagree with Chacon's arguments on prosecutorial misconduct.

III. REASONABLE DOUBT JURY INSTRUCTION

Chacon argues that the trial court's jury instruction defining reasonable doubt relieved the State of its burden of proof and undermined Chacon's presumption of innocence. We agree that

the trial court erred by giving a reasonable doubt jury instruction that did not use the exact language of WPIC 4.01,[6] but that the error was harmless.

We review alleged errors of law in jury instructions de novo and consider them in the context of the instructions as a whole. *State v. Fehr*, 185 Wn. App. 505, 514, 341 P.3d 363 (2015). Trial courts have been directed to use only the reasonable doubt pattern instruction contained in WPIC 4.01. *State v. Bennett*, 161 Wn.2d 303, 317-18, 165 P.3d 1241 (2007). Here, the trial court's jury instruction defining reasonable doubt used almost the exact verbiage of WPIC 4.01, but omitted one sentence from it. The omitted sentence reads, "The defendant has no burden of proving that a reasonable doubt exists." WPIC 4.01. Chacon did not object.[7]

Because the trial court did not instruct per *Bennett*, it committed error; however we conclude that the error was harmless. Erroneous jury instructions are generally subject to a constitutional harmless error analysis. *State v. Brown*, 147 Wn.2d 330, 332, 58 P.3d 889 (2002). Error is harmless if we are satisfied beyond a reasonable doubt that the jury verdict would have been the same absent the error. *Brown*, 147 Wn.2d at 341. Even misleading instructions do not require reversal unless the complaining party can show prejudice. *State v. Aguirre*, 168 Wn.2d 350, 364, 229 P.3d 669 (2010).

---

[6] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01, at, 85 (3d ed. 2008) (WPIC).

[7] Even though Chacon did not object to the jury instruction, we review it. *State v. O'Hara*, 167 Wn.2d 91, 100-01, 217 P.3d 756 (2009) (jury instructions that fail to define the beyond a reasonable doubt standard constitutes manifest constitutional error); RAP 2.5(a)(3).

In deciding harmless error, we are aware that a split exists among the divisions of this court as to whether a harmless error analysis can be utilized when a trial court gives an erroneous reasonable doubt instruction   Division I held that a failure to use WPIC 4.01 constituted reversible error and declined to apply a harmless error analysis. *State v. Castillo*, 150 Wn. App. 466, 472-75, 208 P.3d 1201 (2009).  But Division II declined to follow *Castillo.*  It reasoned that *Bennett* did not hold that an instruction that modified WPIC 4.01 automatically constituted reversible error. *State v. Lundy*, 162 Wn. App. 865, 872, 256 P.3d 466 (2011).  *Lundy* held that the failure to use WPIC 4.01 is not structural error, and that it should be subject to a constitutional harmless error analysis.  *Lundy*, 162 Wn. App. at 872.  We adhere to our ruling in *Lundy*.

Here, the trial court's instruction accurately described the State's burden of proof by clearly stating that the State must prove each element of the crimes charged beyond a reasonable doubt. It also instructed that the "defendant is presumed innocent," and that the "presumption continues throughout the entire trial unless . . . you find it has been overcome by the evidence beyond a reasonable doubt."  CP at 31 (Instr. 3).  Chacon has not shown prejudice and we do not find prejudice.  Therefore, we conclude that although the jury instruction was erroneous, the error is harmless beyond a reasonable doubt.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Bjorgen, C.J.

Sutton, J.