## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48175-8-II |
| Respondent, | |
| v. | |
| CAMERON LEE CHUDY, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Cameron L. Chudy appeals his convictions for unlawful possession of a stolen vehicle and attempting to elude a pursuing police vehicle. Chudy argues that his counsel was ineffective. Chudy also argues that the trial court erred when it failed to dismiss a sleepy juror, departed from the "reasonable doubt" jury instruction (11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 4.01, at 93 (4th ed. 2016) (WPIC)), and admitted surveillance video of the vehicle theft. We conclude that his counsel was not ineffective and the trial court did not commit reversible error. Accordingly, we affirm Chudy's convictions.

FACTS

I. BACKGROUND FACTS AND CHARGING

On April 30, 2015, Officers Zac Wolfe and Kenneth Smith observed a Honda that had been reported as stolen, but after the officers attempted to stop the Honda, it eluded them.

Within minutes, Officer Teresa Antush made contact with Micah Frasu and Chudy—the only pedestrians near where the stolen Honda was found parked. Chudy and Frasu stopped to talk to Officer Antush, but then Chudy attempted to run away and was detained and handcuffed by another officer. Officer Wolfe placed Chudy in the back of his patrol car. Chudy was charged with unlawful possession of a stolen vehicle and attempting to elude a police vehicle.

## II. ADMISSIBILITY OF SURVEILLANCE VIDEO

The State planned to introduce into evidence a surveillance video that showed the Honda being stolen. The trial court found that the video presented "minimal prejudice" because the driver in the video was "much darker skinned" than Chudy and because the State did not plan to argue that the driver was Chudy. 1 Report of Proceedings (RP) at 110-11. The trial court found that the video was probative to show that the car was stolen, where the stolen car was parked, and that the victim did not know the driver or give him permission to drive her car. The trial court denied Chudy's motion to exclude the video.

## III. TESTIMONY RELATED TO SEIZURE AND THEFT OF THE CAR

Trial began in September 2015. The car's owner, Erica Winscot, and Officers Wolfe, Smith, and Antush testified for the State. Winscot testified that she parked her car on her college campus and later found it gone. The State played the campus surveillance video and Winscot confirmed that her car was featured in the video and that the video showed it was driven away by someone she did not know or give permission to drive her car.

Officer Wolfe testified that he has patrolled the same area during the same time shift for five years. It was approximately 9:39 PM on April 30, when he and Officer Smith were on patrol and saw the stolen Honda in front of their patrol car. He activated his emergency lights and siren,

but the Honda sped up instead of stopping. Officer Wolf observed that the passenger was a white male and the driver appeared to be a white or light-skinned black male wearing a light-colored shirt. Officer Wolfe lost sight of the Honda and notified other officers in the area to look for it.

Officer Wolfe testified that another officer located the Honda, unoccupied, and then was told that another officer found two possible subjects, Chudy and Frasu, in the area. Officer Wolfe stated that the subjects were located two minutes and eight blocks from when and where he last saw the Honda. At the scene, Officer Wolfe noted that Chudy was "sweating profusely," breathing heavily, and wearing a light-colored shirt. 2 RP at 246. Officer Wolfe issued a *Miranda*[1] warning to Chudy. Chudy expressed that he understood and waived his right to remain silent.

After Officer Wolfe placed Chudy in the patrol car, Chudy made a series of incriminating statements to Officer Wolfe and to Officer Smith. Officer Wolfe testified that he believed Officer Antush contacted Chudy that night because Chudy was walking about a block from where the stolen car was parked and that there was not typically anyone walking in that area at that time of night.

Officer Antush testified that on April 30, she heard over her radio that two white males were in a stolen Honda. When she entered the area where the stolen car was last seen, she noted Chudy and Frasu were the only pedestrians on the street. As she approached, Officer Antush asked the men if they would talk to her; they assented and engaged in a "friendly conversation." 2 RP at 71. Chudy was sweating profusely and looking side to side, and Frasu was evasive in his answers about what they had been doing that night. Officer Antush confirmed that the suspects' description

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

she heard on her radio was of two white males, but noted that she contacted Chudy and Frasu because they were in the area near the stolen car.

## IV. SLEEPY JUROR

On the trial's second day, the trial court observed an incident when juror 8 appeared to be sleeping and had a delayed response to the trial court's recess announcement. During a recess, the trial court asked juror 8 if she could listen to the evidence, and she confirmed that she could and had been taking notes. The trial court also told juror 8 that she could stand or eat as needed to stay awake. After the jury was excused that day, defense counsel noted that he saw juror 8 "nodding" again and moved for her to be excused. 2 RP at 342. Neither the State nor the trial court observed juror 8 sleeping again, but both saw her raise her hand and ask to stand, as directed, in order to stay alert.

The trial court concluded that it would not excuse juror 8, but would reconsider defense counsel's request if the trial court saw her falling asleep the next morning. Defense counsel did not ask the trial court to reconsider its ruling.

## V. JURY INSTRUCTION ON BURDEN OF PROOF

Both parties requested that WPIC 4.01 define the State's burden of proof, but both parties agreed the phrase "as to these elements" should be removed. 3 RP at 371.

The trial court agreed and directed his clerk to white out "just that last sentence." 3 RP at 371. But the clerk misunderstood the direction and removed the sentence stating, "The defendant has no burden of proving that a reasonable doubt exists as to these elements." CP at 79. Neither party objected to this instruction even though they were given copies after it had been changed.

4

## VI. CLOSING ARGUMENT

During closing argument, the State acknowledged that it carried the burden to prove the elements of both crimes beyond a reasonable doubt. The State referenced the surveillance video, but clarified that it did not allege Chudy stole the car. Defense counsel told the jury that before their deliberation, his client was presumed not guilty and that the State must prove every element of each count.

## VII. CONVICTIONS AND SENTENCE

The jury found Chudy guilty of unlawful possession of a stolen vehicle and attempting to elude a pursuing police vehicle with a special enhancement for threatening another person with harm during the eluding. At sentencing, defense counsel noted that Chudy was not employed at the time of his arrest and that he had been in custody since May 2015. Defense counsel also noted that Chudy was 21, had a young son, and had completed the 10th grade.

Chudy was sentenced to 50 months confinement with credit for time served. The trial court ran this time consecutively to two prior 29-month sentences. The trial court did not impose discretionary legal financial obligations (LFOs) because Chudy was indigent. The trial court concluded that Chudy had minimal education and employment skills. And the trial court entered an order of indigency authorizing Chudy to seek an appeal at public expense. Chudy appeals his conviction.

## ANALYSIS

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

Chudy argues that his counsel was ineffective because he failed to move to suppress Chudy's statements to police on the basis that he was unlawfully seized. He argues no legitimate,

strategic, or tactical reason existed for not bringing the motion to suppress and it resulted in prejudice. We conclude that Chudy's ineffective assistance claim fails.

## A. STANDARD OF REVIEW AND RULES OF LAW

A claim that counsel was ineffective is a mixed question of law and fact that we review de novo. *State v. Jones*, 183 Wn.2d 327, 338, 352 P.3d 776 (2015). The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the United States Supreme Court set forth a two-prong inquiry for reversal of a criminal conviction based on ineffective assistance of counsel. 466 U.S. at 687. Under the *Strickland* test, the defendant bears the burden to show that (1) counsel's performance was deficient and (2) the attorney's deficient performance prejudiced the defense. 466 U.S. at 687. Failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *Strickland*, 466 U.S. at 700.

Representation is deficient if it falls "below an objective standard of reasonableness," given all of the circumstances. *Strickland*, 466 U.S. at 688. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time. *Strickland*, 466 U.S. at 689. There is a strong presumption that counsel's performance was reasonable. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

Because the presumption runs in favor of effective representation, the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel. *Grier*, 171 Wn.2d at 33. Counsel's conduct is not deficient if it can be

characterized as a legitimate trial strategy, but the relevant question is not whether counsel's choices were strategic but whether they were reasonable. *Grier*, 171 Wn.2d at 33-34. There may be legitimate strategic or tactical reasons why a suppression hearing is not sought at trial. *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995).

## B. DEFICIENT REPRESENTATION

Chudy argues that his counsel's performance was deficient because he had no legitimate, strategic, or tactical reason for failing to move to suppress Chudy's statements on the basis that he was unlawfully seized. We disagree.

### 1. LAWFUL SEIZURE

Chudy argues that his seizure following the initial contact with Officer Antush was unlawful because he did not match the description of either suspect given to Officer Antush and because the officers did not have reasonable articulable suspicion that a crime had been committed. This argument fails.

Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution, "the State must show that the officer had a 'reasonable suspicion' that the detained person was, or was about to be, involved in a crime." *State v. Z.U.E.*, 183 Wn.2d 610, 617, 352 P.3d 796 (2015). But there are exceptions to the warrant requirement for investigative stops as set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). *State v. Ladson*, 138 Wn.2d 343, 349-50, 979 P.2d 833 (1999). "The burden is always on the state to prove one of these narrow exceptions." *Ladson*, 138 Wn.2d at 350. If the State fails to establish an exception, all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed. *State v. Young*, 167 Wn. App. 922, 928, 275 P.3d 1150 (2012).

A *Terry* stop is justified when the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. at 21. "For a *Terry* stop to be permissible, the State must show that the officer had a 'reasonable suspicion' that the detained person was, or was about to be, involved in a crime." *Z.U.E.*, 183 Wn.2d at 617 (quoting *State v. Acrey*, 148 Wn.2d 738, 747, 64 P.3d 594 (2003)). When considering the reasonableness of a stop, the trial court must evaluate it based on a totality of the circumstances. *State v. Glover*, 116 Wn.2d 509, 514, 806 P.2d 760 (1991). The trial court takes into account an officer's experience when determining the reasonableness of a *Terry* stop. *Glover*, 116 Wn.2d at 514. The scope of an investigatory stop may be enlarged or prolonged if the stop confirms or arouses further suspicions. *State v. Smith*, 115 Wn.2d 775, 785, 801 P.2d 975 (1990).

Here, although Officer Antush was looking for two white male suspects, she initially contacted Chudy and Frasu because they were the only pedestrians on the street. She engaged them in friendly conversation, but Chudy was sweating profusely and looking side to side, while Frasu gave evasive answers about what they had been doing that night. Once other police units arrived, Chudy ran away, directly into another officer who placed him in handcuffs.

Officer Wolfe testified that he has been patrolling the same area during the same time shift for five years. He stated that Officer Antush located Chudy two minutes and eight blocks from where he last saw the Honda during the elude. Chudy was also found walking about a block from where the stolen car was parked in an area where there was not typically anyone walking at that time of night. Chudy was "sweating profusely" and was breathing heavily when Officer Wolfe spoke to him. 2 RP at 246. And although Officer Antush was told over the radio that the suspects

8

were white males, Officer Wolfe testified that during the elude, he observed the driver to be a light-skinned black male wearing a light-colored shirt and confirmed that Chudy matched that description at the scene where Chudy was detained.[2]

In viewing the totality of the circumstances presented to the investigating officers, based on Officer Wolfe's experience, the location, and Chudy's conduct, the officers had sufficient reasonable suspicion to stop Chudy and investigate him for the elude. *Smith*, 115 Wn.2d at 785; *Glover*, 116 Wn.2d at 514. Officer Wolfe had experience in that geographical area. Officer Antush's testimony that Chudy acted suspiciously and then ran away from the officers supports Chudy's initial seizure. And Officer Wolfe's testimony illustrates why the officers were justified to prolong Chudy's seizure: Chudy's behavior was suspicious and Chudy appeared to be the person that Officer Wolfe observed driving during the elude. Thus, we conclude that a motion to suppress Chudy's statements after his seizure on the basis of an unlawful seizure would have been denied because the seizure was lawful.

2.      NOT DEFICIENT PERFORMANCE

We presume representation was effective, and counsel's conduct is not deficient if it can be characterized as a reasonable, legitimate trial strategy. *Grier*, 171 Wn.2d at 33-34. Given that the trial court would have denied a motion to suppress Chudy's postarrest statements based on unlawful seizure, defense counsel's decision not to make such a motion was a legitimate strategic choice that does not fall below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33-34; *McFarland*, 127 Wn.2d at 336. Thus, we conclude that defense counsel was not deficient.

---

[2] We base our decision on the trial record. But in a suppression hearing, the rules of evidence need not apply and the State may have presented other evidence. ER 104(a). Notwithstanding, the record is sufficient for us to decide the issue.

## II. RETENTION OF THE SLEEPY JUROR

Chudy argues that the trial court abused its discretion by failing to dismiss juror 8 who allegedly fell asleep during trial. This argument is unpersuasive.

We review a trial court's determination of whether to dismiss a juror for abuse of discretion. *State v. Depaz*, 165 Wn.2d 842, 852, 204 P.3d 217 (2009). A trial court abuses its discretion when it bases its decision on untenable grounds or reasons. *Depaz*, 165 Wn.2d at 852. A trial court has the duty to excuse a juror who is unfit for jury service. RCW 2.36.110. That statute provides the grounds for which the trial court may dismiss a juror:

> It shall be the duty of a judge to excuse from further jury service any juror, *who in the opinion of the judge*, has manifested unfitness as a juror by reason of bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service.

RCW 2.36.110 (emphasis added). The test is whether the record establishes that the juror engaged in "misconduct." *State v. Jorden*, 103 Wn. App. 221, 229, 11 P.3d 866 (2000). When resolving a misconduct issue, the trial court must act as an observer and decision-maker, and we defer to the trial court's factual determinations. *Jorden*, 103 Wn. App. at 229.

After the trial court observed that juror 8 appeared to be sleeping and had a delayed response to the trial court's recess announcement, it asked juror 8 if she could listen to the evidence and she confirmed that she could and that she had been taking notes. As required by RCW 2.36.110, the trial court evaluated whether juror 8 was unfit to serve. Based on its observations of juror 8, the trial court found that she was fulfilling her duties and concluded that she should not be excluded on the basis of a single brief incident. We defer to the trial court's factual determinations and conclude that the trial court did not abuse its discretion when it declined to dismiss juror 8.

### III. ADMISSION OF SURVEILLANCE VIDEO

Chudy argues that the surveillance video should not have been admitted into evidence pursuant to ER 403 because the video had no probative value but carried significant risk of unfair prejudice. Chudy's argument is unpersuasive.

We review the trial court's ruling on the admissibility of evidence for abuse of discretion. *State v. Vreen*, 143 Wn.2d 923, 932, 26 P.3d 236 (2001). A trial court abuses its discretion only if no reasonable person would take the view adopted by the trial court. *State v. Wooten*, 178 Wn.2d 890, 897, 312 P.3d 41 (2013). Under ER 401, evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence. The trial court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. ER 403. A charge of possession of a stolen vehicle requires the State to prove that a defendant knowingly possessed a stolen motor vehicle. RCW 9A.56.068, .140.

Here, the trial court found that the video presented "minimal prejudice" because the driver in the video was "much darker skinned" than Chudy and because the State did not plan to argue that Chudy stole the car. 1 RP at 110-11. This finding was reasonable given that Chudy was not charged with stealing the car, the State clarified that it was not alleging Chudy did so, and the trial court viewed the surveillance video while Chudy was in the courtroom and thus was able to evaluate whether the driver in the video resembled Chudy.

The trial court also found that the video was probative to establish that the car was stolen. The State had to prove that the car was stolen in order to prove that Chudy knowingly possessed a

stolen vehicle. RCW 9A.56.068, .140. The video showed where the stolen car was parked and helped establish the facts that the victim did not know the driver in the video or give him permission to drive her car. Thus, the video was relevant to show that the car was stolen. ER 401. And the trial court's finding that it was probative was reasonable. Thus, we conclude that the trial court did not abuse its discretion by admitting the surveillance video.

## IV. DEPARTURE FROM WPIC 4.01

Chudy argues that the trial committed reversible error when it departed from WPIC 4.01 by failing to instruct the jury that he bore no burden to prove a reasonable doubt existed, thereby prejudicing him. This argument fails.

We review an erroneous jury instruction for constitutional harmless error. *State v. Lundy*, 162 Wn. App. 865, 871-72, 256 P.3d 466 (2011). We may hold the constitutional error harmless if we are satisfied beyond a reasonable doubt that the jury verdict would have been the same absent the error. *State v. Franklin*, 180 Wn.2d 371, 383, 325 P.3d 159 (2014).

Instructions must convey to the jury that the State bears the burden of proving every essential element of a criminal offense beyond a reasonable doubt. *State v. Bennett*, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007). In *Bennett*, the Supreme Court directed trial courts to use WPIC 4.01 when instructing on the State's burden to prove every element of charged crimes beyond a reasonable doubt. 161 Wn.2d at 317-18. But the Supreme Court in *Bennett* affirmed the defendant's conviction even though the trial court's reasonable doubt instruction differed from WPIC 4.01. 161 Wn.2d at 318.

WPIC 4.01 reads in part as follows:

> [The] [Each] defendant has entered a plea of not guilty. That plea puts in
> issue every element of [the] [each] crime charged. The [State] [City] [County] is

the plaintiff and has the burden of proving each element of [the] [each] crime beyond a reasonable doubt. *The defendant has no burden of proving that a reasonable doubt exists* [as to these elements].

(Emphasis added.)

Here, the instruction did not include the sentence "[t]he defendant has no burden of proving that a reasonable doubt exists as to these elements." WPIC 4.01. The instruction given to the jury was otherwise identical to WPIC 4.01.

To support his argument that the trial court's departure from WPIC 4.01 prejudiced him, Chudy analogizes this case to *State v. Castillo*, 150 Wn. App. 466, 472, 208 P.3d 1201 (2009), and distinguishes this case from *Lundy*.

In *Castillo*, the trial court submitted a reasonable doubt instruction to the jury omitting the sentence that "'[t]he defendant has no burden of proving that a reasonable doubt exists'" and interjected its own language to define "reasonable doubt," thus departing from WPIC 4.01. 150 Wn. App. at 473 (quoting WPIC 4.01). Division One of this court noted that the Supreme Court in *Bennett* unambiguously directed that "trial courts are to use ***only*** WPIC 4.01 as the reasonable doubt instruction." 150 Wn. App. at 472 (alteration in original). Thus, the *Castillo* court concluded that it was reversible error that the trial court failed to use WPIC 4.01 as the reasonable doubt instruction. 150 Wn. App. at 475. This case is distinguishable from *Castillo*.

First, the instruction given here departs from WPIC 4.01 in only one way—with the deletion of one sentence—whereas in *Castillo*, the same sentence was deleted and the trial court substituted its own reasonable doubt definition rather than WPIC 4.01's language. 150 Wn. App. at 471-73. Thus, the *Castillo* instruction represented a greater departure from WPIC 4.01 than we have here. Second, in *Lundy*, this court declined to follow Division One's holding in *Castillo* that

13

modifying WPIC 4.01 automatically constitutes reversible error and instead followed the general rule that erroneous jury instructions are subject to a constitutional harmless error analysis. 162 Wn. App. at 872; 150 Wn. App. at 472.

We follow *Lundy* and review the jury instruction here using a constitutional harmless error analysis. We may hold the constitutional error harmless if we are satisfied beyond a reasonable doubt that the jury verdict would have been the same absent the error. *State v. Bashaw*, 169 Wn.2d 133, 147, 234 P.3d 195 (2010).

In *Lundy*, this court considered a jury instruction given by the trial court that reordered the paragraphs of WPIC 4.01. 162 Wn. App. at 870-71. The *Lundy* court concluded that this modification of WPIC 4.01 was harmless error given that Lundy could not establish that he was prejudiced by the reordering. 162 Wn. App. at 872-73. As in *Lundy*, Chudy has similarly failed to establish prejudice.

Chudy argues that he was prejudiced because the omission of the sentence from WPIC 4.01 left open the possibility that jurors could conclude that he had the burden of raising a reasonable doubt. But the instruction given unequivocally states that the State had the "burden of proving each element" of the crimes "beyond a reasonable doubt." CP at 16. The instruction also communicated the fundamental concept that Chudy was presumed innocent until proven guilty beyond a reasonable doubt.

Additionally, in closing argument, the State did not suggest or even imply that Chudy was required to prove a reasonable doubt, but stated that it carried the burden to prove the elements of both crimes beyond a reasonable doubt. Defense counsel also told the jury that before their

14

deliberation, his client was presumed not guilty and that the State must prove every element of each count.

We conclude that the omission of the sentence from WPIC 4.01 was error under *Bennett*. But the instruction given defined reasonable doubt and clearly communicated that the State carries the burden of proof. Thus, we are satisfied beyond a reasonable doubt that the jury verdict would have been the same absent the error, making the error harmless.

## V. APPELLATE COSTS

Chudy argues that this court should decline to impose appellate costs because he is indigent. The State argues that this court cannot rule on appellate fees, but must wait until the State files a cost bill. We agree with Chudy.

We review de novo a question of law regarding whether the rules of appellate procedure authorize the award of appellate costs. *State v. Stump*, 185 Wn.2d 454, 458, 374 P.3d 89 (2016). RCW 10.73.160(1) vests the appellate court with discretion to award appellate costs. *State v. Sinclair*, 192 Wn. App. 380, 388, 367 P.3d 612, *review denied*, 185 Wn.2d 1034 (2016). RAP 14.2 states, "A commissioner or clerk of the appellate court will award costs to the party that substantially prevails on review, *unless the appellate court directs otherwise in its decision terminating review*." (Emphasis added.) We presume a party remains indigent "throughout the review" unless the trial court finds otherwise. RAP 15.2(f).

### A. AUTHORITY TO RULE ON APPELLATE COSTS BEFORE COST BILL

Here, the State asserts that the procedure set out in *Sinclair* prematurely raises an issue not before this court and effectively nullifies RCW 10.73.160(3) because any defendant found indigent at sentencing will be excused from paying appellate costs. Thus, the State argues that this court

cannot review appellate costs because a defendant may challenge the imposition of appellate costs only after an appellant does not prevail on appeal and the State files a cost bill. These arguments are unpersuasive.

*Sinclair* does not nullify RCW 10.73.160(3) and does not state that any defendant found indigent at trial will always be excused from appellate costs. 192 Wn. App. at 388. RCW 10.73.160 provides authority for this court to award appellate fees, and RAP 14.2 makes clear that this court has the discretion to decide whether to award appellate costs in its "decision terminating review," not just after the State files a cost bill. Thus, we exercise our discretion and review whether Chudy should pay appellate costs.

## B. CHUDY'S ABILITY TO PAY

Chudy was unemployed at the time of his arrest and had been in custody since May 2015. At the time of sentencing in September, Chudy was 21, had a 2-year-old son, and completed only 10th grade. Chudy was sentenced to 50 months to run consecutively with a 29-month preexisting sentence. The trial court concluded that Chudy had minimal education and employment skills. And the trial court entered an order of indigency authorizing Chudy to seek an appeal at public expense. Given the length of Chudy's sentence, his minimal education and employment skills, and his previous unemployment, we use our discretion and hold that an award of appellate costs to the State is not appropriate.

No. 48175-8-II

We affirm Chudy's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

MAXA, A.C.J.

MELNICK, J.